## ACTION FOR RECOVERY FOR SHARES OF A NEW ISSUE OF STOCK.

Court of Appeals for Hamilton County.

SECOND NATIONAL BANK OF CINCINNATI V. GEORGE E. McDONALD.

Decided, December 15, 1913.

*Banks and Banking—Representations as to the Value of New Stock—Made by an Officer of the Issuing Bank to an Intending Purchaser Not Fraudulent, When—Authority of the Bank to Issue Additional Stock or to Take Its Own Stock as Security for a Loan.*

In an action by a bank for recovery on a note, executed in its favor in payment for a certificate of a new issue of stock put forth by the bank, the defense of fraudulent representations does not lie, where the representations consisted of a statement by the cashier that the bank had a large surplus and was paying twelve per cent. dividends, which was true, and that the dividends would pay the interest on the note which was not true as would have appeared

from a mathematical calculation, and that the dividends would probably be increased which did not occur; nor does the defense lie in such a case that the increase of the capital stock of the bank was invalid when it appears that it was duly authorized by the comptroller of the currency, or that the transaction was *ultra vires* on the theory that the note was a mere loan to the bank for which it took its own stock as collateral, or that there was no consideration for the loan because the stock was not delivered to the defendant but was held by the bank as collateral, where possession could have been obtained by the defendant at any time by paying the note.

*Jelke, Clark & Forchheimer* and *Peck, Shaffer & Peck,* for plaintiff in error.

*Hackett, Yeatman & Harris,* contra.

JONES (O. B.), J.; SWING, J., and JONES (E. H.), J., concur.

This was an action on a promissory note for $2,750 given by defendant to plaintiff dated February 1, 1912, payable on demand. This note was given in renewal of a note for the same amount dated January 16, 1909.

The plaintiff, a national bank whose capital stock was $500,-000, by virtue of the Federal statutes took the necessary steps to increase its capital to $1,000,000. The defendant became a subscriber for ten shares of its capital stock, purchased by him at the market price of $275 per share. The bank loaned him $2,750 to pay for this stock, and took the original promissory note as evidence of that loan, crediting $2,750 as cash paid in on account of its capital stock. A certificate for ten shares of stock was made out in the name of G. E. McDonald, and instead of his endorsing a transfer in blank on this certificate, an irrevocable power of attorney was executed by him appointing the Second National Bank as his attorney, to sell, assign, transfer and set over all or any part of said stock. This stock, with such power of attorney, was held as security for said loan.

Defendant paid twelve quarterly installments of interest on said note, at five per cent. which were credited on the back of the note, the first installment being credited February 1, 1909, and the last one on the original note November 1, 1911. There

is also a credit on the note sued upon of $47.80, paid August 23, 1912. McDonald received dividends on this stock as declared by the bank.

The petition is the usual form on a note. Defendant filed an answer and cross-petition in which, in addition to a general denial, he pleaded that he had by the fraud of the bank been induced to subscribe for shares of its capital stock, which was then paying a dividend of twelve per cent., and on the promise that it would take his note payable on demand with six per cent. interest, that it would not call such loan but would hold the certificate of stock as payment for the said note, and that the dividends on said stock would more than pay the interest on said note and in addition would pay part of the principal, so that eventually said stock so subscribed would become his property without having to pay out any money for it.

Defendant alleges that said statements were not true, and that he never received the stock and the note was therefore without consideration; and he further pleads that the act of receiving said note in payment for stock subscription was *ultra vires* on the part of the bank. And by way of cross-petition defendant asks for a judgment against the bank for twelve quarterly payments of interest upon said note, of $41.25 each, amounting to $495.

The allegations of this answer were denied by a reply.

At the close of the evidence the court below refused plaintiff's motion for an instructed verdict in its favor, but granted the motion of the defendant for an instructed verdict in his favor without finding any money due to him.

The evidence shows that Mr. McDonald, who was a building contractor, had erected the new bank building for plaintiff in which it was doing business, and was acquainted with its officers. When its capital stock was about to be increased Mr. Williams, its cashier, suggested to him the idea of taking some of its stock. Mr. Williams stated to Mr. McDonald, when he made the subscription, that the bank was in a prosperous financial condition and had a surplus of $500,000 which was true, and that the bank was declaring dividends of twelve per cent.

per annum, which was also true, and further stated that these dividends would about pay the interest on the necessary loan to buy the stock. While the answer alleges that the interest on the note was to be six per cent. it seems that the interest charged by the bank was five per cent. which amounted to $137.50 per year, while the dividend at twelve per cent. was $120 on ten shares. These facts McDonald knew at the time of the subscription so he was not misled into believing that the rate of dividend then being paid would quite carry the interest on the note. The opinion of both Mr. Williams and of Mr. McDonald at that time was that the stock would appreciate in value and the dividends would probably be increased, but there is no testimony showing that any representations were made as to how much this increase might be or when it might be had. The cashier testified that he himself had at the same time bought stock of the bank and then believed it a good investment. There is no evidence in the record that the bank changed its prosperous condition during the time that this note and stock were carried, and in fact we fail to find any evidence that the bank ever did become in a failing or insolvent condition.

Representations made by the cashier to McDonald at the time he subscribed for his stock, so far as past and present conditions were concerned, were true. Any statements made by him as to future prospects or hopes relating to the bank were merely his opinion, and appear to have been honestly made, and could not be held fraudulent with the effect of relieving the defendant from his obligation. *Armstrong* v. *Karshner,* 47 O. S., 276.

As stated above, McDonald knew that the dividend at the current rate would not quite pay the interest, and there would have to be a material increase in the rate of dividend to have it not only carry the interest but allow payments on the principal of his debt to the bank.

Defendants argue that the increase of capital stock by the bank was illegal and therefore invalid, because a promissory note had been taken in payment of the stock when cash was required under Section 5142, Revised Statutes of United States. This issue of capital stock was authorized by the comptroller of

currency. His action is conclusive and its legality can not be questioned by defendant. *Latimer* v. *Bard,* 76 Fed. Rep., 536.

It is argued by defendant that this was virtually a loan made by the bank, taking its own stock as collateral, and that such a loan being forbidden by law was *ultra vires* and therefore can not be collected back by the bank. Such a defense by one who has given a note and secured a loan for it will not be allowed. *National Bank* v. *Stewart,* 107 U. S., 676.

It is also argued that defendant received no consideration for the loan, as the stock was never in his hands. This defense can not be allowed, as the stock was actually issued. It was paid for by the money loaned on defendant's note. As a stockholder he received dividends upon the stock and paid interest on the note at least for two years, and at any time he had seen fit to do so he could have paid his note and secured possession of the stock certificate.

It is argued that there is no individual account with McDonald shown in the books of the bank; that one should have been opened in which he should have been credited with the money loaned and debited for the amount paid for the stock, the entries offsetting each other and thus closing his account, these in addition to the entry in the capital stock account showing the receipt of cash in payment for the stock sold. This is a matter of bookkeeping at best, but it does not seem to us necessary to open any account with McDonald and have cross entries therein balancing each other. From the evidence, it was evidently treated as a cash loan to him, just as though the cash had been counted out to him when his note was taken, and then counted back by him to pay for the stock. The entry crediting capital stock, given in evidence, seems to be all that was necessary in this transaction, in addition to the entries in bills receivable accounts.

As there is no valid defense to the note shown by the evidence, the court below was in error in instructing a verdict for the defense and refusing to grant plaintiff's motion for an instructed verdict in its favor.

The judgment below is reversed, and judgment will be entered here for plaintiff.